UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No.: 17-3820(DSD/KMM)

William Armas and Nancy Armas,

       Plaintiff,

v.

Fifth Third Bancorp and Freddie Mac,

       Defendants.

**ORDER**

    Daniel M Eaton, Esq. and Christensen Law Office PLLC, 800 Washington Ave. N. Suite 704, Minneapolis, MN 55401, counsel for plaintiffs.

    Jesse E Sater, Esq., Charles J. Schoenwetter, Esq. and Bowman & Brooke LLP, 150 South 5th St., Suite 3000, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss the amended complaint by defendants Fifth Third Bancorp and Freddie Mac. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This mortgage dispute arises out of the foreclosure sale of the home owned by plaintiffs William and Nancy Armas.[1] Armas purchased the subject property, located at 6773 East Shadow Lake Drive, Lino Lakes, Minnesota, in January 2006. Am. Compl. ¶¶ 4, 13. In 2011, Armas refinanced the original mortgage through a

---

[1] The court will refer to plaintiffs in the singular for ease of reference. The court also will refer to defendants collectively as "Fifth Third" unless a finer distinction is required.

mortgage loan with defendant Fifth Third Bancorp. Id. ¶ 14. In 2013, Armas moved to California, but kept the Minnesota home as a rental property. Id. ¶¶ 15-16. In July 2015, Fifth Third contacted Armas and notified him that the payment for that month was overdue and that the monthly payment had increased due to a change in his escrow payment amount. Id. ¶ 18. On July 30, Armas made a $2,500 payment on the loan, which included the monthly mortgage payment plus a late fee ($2,315.68) and an additional $184.32. Id. ¶ 23. Thereafter, Armas made monthly payments of at least $2,250, which he believed covered his monthly payment plus an additional amount to be applied toward the principal.[2] Id. ¶ 24.

On January 15, 2016, one day before the payment was due, Armas contacted Fifth Third to see how much he owed that month. Id. ¶ 25. Fifth Third told him that he owed $2,433.24, but did not inform him that his account was in arrears. Id. Armas made the January payment in full and thereafter made monthly payments in the amount of $2,250 through October 2016. Id. ¶¶ 26-27.

In November 2016, Armas contacted Fifth Third to obtain a tax statement for his 2015 taxes. Id. ¶ 28. Fifth Third told him that his account was in arrears and that the house had been sold to defendant Freddie Mac in a foreclosure sale on May 27, 2016. Id. ¶¶ 29-30, 47. Fifth Third fully refunded Armas's post-foreclosure

---

[2] Armas did not receive monthly statements from Fifth Third, so he paid a little more than what he believed he owed each month. Id. ¶¶ 23-24.

mortgage payments in December 2016 in the amount of $27,066.76. Id. ¶¶ 31, 50.

Because Armas had not provided his forwarding address to Fifth Third, the bank sent the foreclosure notice and related documents to the Lino Lakes address. Id. ¶¶ 32-33. The renters apparently did not forward those documents to Armas. The bank also provided notice of the foreclosure by advertisement under Minn. Stat. § 508.02. Id. ¶ 47. The notice stated that Armas was $15,313.44 in arrears. Id. ¶ 34. The amount was so large despite Armas's monthly payments because Fifth Third applied the payments made from September 2015 forward to an "unapplied funds" or "suspense" account. Id. ¶ 35. Fifth Third did so because those payments were less than the full monthly amount due. Id. ¶ 36. Specifically, in August 2015, the payments increased from $2,236.27 to $2,433.24 per month, but Armas continued to pay $2,250 per month. Id. ¶¶ 27, 36-38. Under the terms of the mortgage, Fifth Third holds insufficient payments in a suspense account without applying them to the mortgage loan until the bank receives funds that equal a full mortgage payment. Id. ¶ 36; Sater Aff. Ex. A § 1. When the bank receives sufficient funds, the amount due is withdrawn from the suspense account and applied to the loan. Am. Compl. ¶ 36; Sater Aff. Ex. A § 1.

According to Armas, Fifth Third should have withdrawn funds from the suspense account as soon as there was a sufficient amount

to cover the previous month's mortgage payment, which would have resulted in a deficit of less than $200 each month rather than allowing the suspense account to accumulate each month. Am. Compl. ¶ 40. Armas does not deny, however, that his account was perpetually in arrears beginning in September 2015 and was never made current. Id. ¶¶ 42-44.

On July 19, 2017, Armas filed suit against defendants in Anoka County, and defendants timely removed. On February 28, 2018, Armas filed an amended complaint, alleging (1) wrongful foreclosure; (2) violation of Minnesota's foreclosure by advertisement statute, Minn. Stat. § 580.02; (3) breach of the implied covenant of good faith and fair dealing; and (4) quiet title, Minn. Stat. § 559.01.[3] Defendants now move to dismiss the amended complaint.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual

---

[3] Armas has withdrawn his claim under Minn. Stat. § 580.041 (Count III). ECF No. 34 at 20.

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings."  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  Here, the court will consider the mortgage and note.

**II. Wrongful Foreclosure**

Armas asserts that the foreclosure sale should be voided because Fifth Third waived the right to default by accepting monthly payments during the foreclosure process and for several months after the foreclosure sale.  Fifth Third argues that it is entitled to dismissal of this claim because the mortgage allows it to receive payments during and after the foreclosure and expressly states that such acceptance does not constitute a waiver.  The

court agrees with Fifth Third.

The mortgage provides that Fifth Third "may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future ...." Salter Aff. Ex. A § 1. Thus, the fact that Fifth Third accepted partial payment from Armas did not prohibit it from proceeding with foreclosure.

Armas attempts to sidestep the mortgage's non-waiver provision by citing to cases in which courts have held that post-foreclosure payments effectively waive the sale. Those cases are inapposite, however. For example, in Hayes-Broman v. J.P. Morgan Chase Bank, 724 F. Supp. 2d 1003, 1007 (D. Minn. 2010), the mortgagor and mortgagee reached agreement during the redemption period that allowed the homeowner to regain ownership of the property. The court held that "by negotiating an agreement with [the mortgagee] to pay off the mortgage, Plaintiff asserted her interest in the Property and [the mortgagee] reflected its intent to restore Plaintiff's interest in the property[,]" thus voiding the foreclosure sale. Id. at 1014. Here, there is no post-foreclosure agreement between the parties altering their relationship as set forth in the mortgage.

Armas's reliance on Brack v. Brack, 16 N.W.2d 557 (Minn. 1944) is likewise unavailing. In Brack, the court held that the lender's

6

agreement to accept partial payments waived any contractual right to declare default. Id. at 560-61. But the contract in Brack did not include an anti-waiver provision as does the instant mortgage. And, unlike the lender in Brack, Fifth Third never agreed that Armas's partial payments were sufficient to meet his obligations under the mortgage. Indeed, the mortgage provides to the contrary: "[Fifth Third] may accept any payment or partial payment insufficient to bring the Loan current ... but ... is not obligated to apply such payments at the time such payments are accepted." Salter Aff. Ex. A § 1. Therefore, given the circumstances of this case, Fifth Third did not waive its right to foreclose by receiving or accepting Armas's partial payment.

Further, Minnesota law allows a mortgagor the opportunity to redeem the property following foreclosure by paying the amount in arrears plus interest within six months of the sale.[4] Minn. Stat. § 580.23 subdiv. 1. Because the law contemplates that payments may be made following the foreclosure sale, the court cannot conclude that Fifth Third's receipt of those payments constitutes a waiver of its right to foreclose. Doing so would undermine the purpose of the redemption statute. As a result, the wrongful foreclosure

---

[4] It is undisputed that Armas never made his loan current and therefore was not entitled to redeem the property within the six-month redemption period.

claim fails as a matter of law.[5]

**III. Implied Covenant of Good Faith and Fair Dealing**

Armas next contends that Fifth Third breached the implied covenant of good faith and fair dealing by stockpiling his payments in the suspense account rather than applying them to the loan.  The court disagrees.

Every contract under Minnesota law, "includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract."  In re Hennepin Cty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (internal quotation marks and citation omitted).  A party breaches the implied covenant when it acts in bad faith, that is, when it "refus[es] to fulfill some duty or contractual obligation based on an ulterior motive."  Residential Funding Co. v. Terrace Mortg. Co., 725 F.3d 910, 918 (8th Cir. 2013) (internal quotation marks omitted) (quoting Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998)); see also Team Nursing Servs. v. Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 641–42 ("[T]he implied covenant of good faith and fair dealing governs the parties' performance and

---

[5] For the same reason, the court dismisses the foreclosure-by-advertisement claim (Count II), which is dependent on the waiver theory.  Am. Compl. ¶¶ 66.  To the extent that claim is also based on the assertion that Armas was not actually in default, id. ¶ 67, it still fails.  The amended complaint establishes that Armas was in arrears each month for many months and therefore was in default.  Id. ¶ 42.

prohibits a party from failing to perform for the purpose of thwarting the party's rights under the contract."). A party does not act in bad faith when it exercises its legal and contractual rights. Residential Funding, 725 F.3d at 918; Herzog, 575 N.W.2d at 125.

Armas asserts that Fifth Third's failure to apply his partial payments to the loan constituted bad faith. But the mortgage expressly allows Fifth Third to keep partial payments in a suspense account until the borrower brings the loan current:

> Lender may accept any payment or partial payment insufficient to bring the Loan current ... but Lender is not obligated to apply such payments at the time such payments are accepted .... Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.

Salter Aff. Ex. A § 1. It is undisputed that Armas never made the loan current. Therefore, Fifth Third had the legal right to hold the partial payments in the suspense account and did not act in bad faith by doing so. As a result, this claim also fails as a matter of law.

**IV. Quiet Title**

Minnesota's quiet-title statute provides that "[a]ny person in possession of real property ... may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties,

respectively." Minn. Stat. § 559.01. To state a quiet-title claim, a plaintiff must state facts sufficient to allow the court to draw the reasonable inference that he or she is in possession of property and that a defendant claims a right or title to the property but has no such right or title." Haubrich v. U.S. Bank Nat'l Ass'n, No. 12-565, 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012).

Armas's quiet-title claim is based on the allegations already considered and rejected by the court. Am. Compl. ¶ 95. Further, Armas has not established that he is in possession of the property - a prerequisite for bringing a quiet title action. Minn. Stat. § 559.01. Indeed, according to the amended complaint, Armas has not lived in the house since December 2013, and Freddie Mac evicted his tenants in January 2017. Am Compl. ¶¶ 15, 51. As a result, the court must also dismiss the quiet-title claim.

#### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss the amended complaint [ECF No. 29] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 30, 2018         s/David S. Doty
                            David S. Doty, Judge
                            United States District Court